1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **NORTHERN DISTRICT OF CALIFORNIA**

9 **SAN FRANCISCO DIVISION**

10

| | |
|---|---|
| 11 EDWIN PAREDES-PEREZ, | Case No. 12-cv-01737 NC |
| 12 Plaintiff, | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| 13 v. | Re: Dkt. Nos. 15, 16 |
| 14 MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| 15 | |
| 16 Defendant. | |

17

18        Plaintiff Edwin Paredes-Perez seeks judicial review of the Commissioner of Social

19 Security's final decision denying his claim for disability benefits and Supplemental Security

20 Income ("SSI") as a person disabled and unable to engage in substantial gainful activity.

21 Dkt. No. 1.  Both parties move for summary judgment.  Dkt. Nos. 15, 16.  The issues are

22 (1) whether the ALJ properly weighed the medical opinions, and (2) whether substantial

23 evidence supports the ALJ's finding regarding the severity of Paredes-Perez's conditions

24 and his assessment of Paredes-Perez's residual functional capacity.  The Court finds that the

25 ALJ did not err in weighing the medical opinions and that substantial evidence supports his

26 conclusion that Paredes-Perez is not disabled.  Accordingly, the Court DENIES Paredes-

27 Perez's motion for summary judgment and GRANTS the Commissioner's cross-motion for

28 summary judgment.

# I. BACKGROUND

## A.   Agency Review

On April 13, 2009, Paredes-Perez applied for disability benefits and SSI benefits claiming that injuries to his back, shoulder, elbow, and knee, rendered him disabled since January 1, 2008. (AR 148, 171.) Paredes-Perez claimed that as a result of his injury he could no longer perform his job as a janitor, which required heavy lifting. (AR 171.) On July 15, 2009, the Social Security Administration ("SSA") denied Paredes-Perez's request for both types of benefits for failing to respond to the SSA's request for additional information pertaining to his daily activities and work history. (AR 68-69, 72.)

On September 21, 2009, Paredes-Perez revised his application to include claims for disability due to mental impairments and requested that his claim be reconsidered. (AR 77.) The SSA reconsidered Paredes-Perez's request and determined that he suffered from back, shoulder, elbow, and knee injuries, as well as depression and post-traumatic stress disorder ("PTSD"), but concluded that his conditions were not so severe as to prevent him from performing his past relevant work. (AR 79-80.) The SSA found that Paredes-Perez could work as a security guard, a job that he had held previously. (AR 79-80.)

## B.   Administrative Review

Paredes-Perez sought administrative review of the SSA's decision. (AR 87.) An initial hearing was held before Administrative Law Judge Thomas J. Gaye on August 26, 2010. (AR 50.) Judge Gaye postponed the hearing after Paredes-Perez testified that an MRI of his shoulder had been performed but that neither he nor his attorney had the results. (AR 62-63.) A second hearing before Judge Gaye was held on October 6, 2010. (AR 33.) At the second hearing, Paredes-Perez testified about his physical and mental health and how it impacted his ability to work. (AR 37-47.) Vocational expert Nancy Rynd also testified. (AR 47-49.)

### 1.   Paredes-Perez's testimony at the October 6, 2010 hearing

Paredes-Perez is forty-four years old, attended high school through the tenth grade in Nicaragua, learned English on his own after moving to the United States, and was living in

a friend's living room at the time of the October 6, 2010 hearing.  (AR 37-44.)  As a result of an accident at work, Paredes-Perez experiences significant pain when bending over and when trying to lift things.  (AR 40.)  Paredes-Perez stated that not being able to work is making him feel increasingly depressed.  (AR 44.)

At the time of the hearing, Paredes-Perez was taking Hydrocodone, a painkiller, Meloxicam, an anti-inflammatory, and Cymbalta, an antidepressant, to treat his symptoms.  (AR 41.)  Although the medication helps, the pain he experiences in his back nevertheless persists, and he is "in pain basically every day."  (AR 40-41.)  Paredes-Perez stated that moving helps with the pain and that it is easy for him to walk around, but that he sometimes feels it necessary to lie down and ice his back to dull the pain.  (AR 41-42.)  He estimated that on average, he has to lie down three to four times each day.  (AR 44.)  At times the pain is so bad that he has to remain in bed all day, which he estimated occurs three times each week.  (AR 45.)  He often feels drowsy as a result of the medication he is taking and, due to his pain and drowsiness, has stopped socializing.  (AR 41, 46.)  Paredes-Perez stated that he had started seeing a psychologist again and that he felt as though the Cymbalta was helping with his depression.  (AR 43, 47.)

## 2. The ALJ's findings

On October 27, 2010, the ALJ issued his decision, finding that Paredes-Perez suffers from both severe and non-severe impairments, but retains sufficient residual functional capacity to perform light work.  (AR 20-22.)  The ALJ analyzed Paredes-Perez's claims under the five-step evaluation process for determining disability.  (AR 19); *see* 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).

At step three, the ALJ considered the evidence in the record of Paredes-Perez's physical and mental impairments and found that no combination of impairments satisfy the severity of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, required for a finding of disability.  (AR 21-22.)  The ALJ found that his physical restrictions, as described by treating physician Wayne Anderson, M.D., were severe because they significantly limited his ability to perform basic work activities.  (AR 20-21.)  In addition,

the ALJ found that Paredes-Perez suffered from "other non-severe, medically determinable impairments . . . of chronic pain syndrome, posttraumatic stress disorder (PTSD), major depressive disorder, right shoulder pain, right elbow pain, right knee pain, diaphoresis, fatigue and circadian rhythm sleep disorder." (AR 21.)  The ALJ found, however, that the impairments were "not attended, singly or in combination, with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments." (AR 21-22.)

In reaching this conclusion, the ALJ relied on the opinion of qualified medical examiner, Brendan Morley, M.D., who examined Paredes-Perez in September 2008. (AR 21.)  Dr. Morley concluded that although Paredes-Perez complained of pain symptoms, there was "no objective diagnostic evidence corresponding to his right shoulder, right elbow or right knee." (AR 21.)  The ALJ found that Dr. Anderson's assessments "were based on [Paredes-Perez's] subjective symptoms," rather than objective medical evidence, and so accorded his opinion less weight. (AR 21.)  Furthermore, a February 2009 MRI did not reveal any evidence of nerve root impingement. (AR 23, 312, 495.)

The ALJ also considered the notes and opinion of Jessica Katzman, Psy.D., who treated Paredes-Perez from June 23, 2009 through September 23, 2009. (AR 472, 451.)  Dr. Katzman diagnosed Paredes-Perez with PTSD and major depressive disorder, but the ALJ accorded her opinion limited weight because she treated Paredes-Perez for a period of only three months and her opinion "lack[ed] sufficient evidence to establish a severe psychiatric impairment." (AR 21, 447-79, 489.)

Next, the ALJ considered the extent to which Paredes-Perez's impairments, both severe and non-severe, limited his ability to do basic work activities. (AR 22-24.)  The ALJ considered the opinions of various experts and treatment providers as well as Paredes-Perez's testimony. (AR 22-24.)  The ALJ conceded that "[Paredes-Perez's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," but he found that Paredes-Perez's "statements concerning the intensity, persistence and

//

Case No. 12-cv-01737 NC
ORDER RE: MOTIONS FOR                    4
SUMMARY JUDGMENT

limiting effects" of his disorders were not credible.  (AR 22.)  The ALJ concluded that Paredes-Perez had "the residual functional capacity to perform light work."  (AR 22.)

At step four, the ALJ determined that Paredes-Perez could do relevant past work.  (AR 24.)  The ALJ found that Paredes-Perez was capable of working as a security guard, which the vocational expert testified qualified as light work.  (AR 24, 47-48.)

**C.    The Appeals Council's Denial of Review**

Paredes-Perez appealed the ALJ's decision on November 5, 2010, arguing that the ALJ had made a legal error.  (AR 14.)  Specifically, Paredes-Perez argued that the ALJ failed to: (1) schedule a psychiatric or psychological consultative exam, (2) follow the "slight abnormality" standard when finding that Paredes-Perez's psychiatric impairment was non-severe, (3) give Paredes-Perez's treating physicians' opinions adequate weight, and (4) consider the side effects of Paredes-Perez's medications.  (AR 247-49.)  In conjunction with his appeal, Paredes-Perez submitted medical records from Peninsula Orthopedics.  (AR 612-28.)  The Appeals Council considered the additional evidence and Paredes-Perez's reasons for disagreeing with the ALJ but found no reason to review the ALJ's decision and denied his request for review.  (AR 1.)

**D.    Jurisdiction**

The parties have consented to the jurisdiction of a United States magistrate judge under 28 U.S.C. § 636(c).  Dkt. Nos. 4, 6.

**II. STANDARD OF REVIEW**

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405(g).  "When the Appeals Council denies a request for review, . . . the ALJ's decision becomes the final decision of the Commissioner."  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).  "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the

1  Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec.*

2  *Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

3      The decision of the Commissioner should only be disturbed if it is not supported by

4  substantial evidence or it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679

5  (9th Cir. 2005) (internal citation and quotation omitted).  "Substantial evidence is more

6  than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211,

7  1214 n.1 (9th Cir. 2005) (internal citation and quotation omitted).  It is evidence that a

8  reasonable mind would accept as adequate to support the conclusion. *Id.*  "Where evidence

9  is susceptible to more than one rational interpretation, the ALJ's decision should be

10  upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal

11  citation and quotation omitted).

12      When reviewing the ALJ's weighing of medical evidence, additional standards

13  apply. *Id.*; 20 C.F.R. § 416.927.  If a claimant has a treatment relationship with a provider,

14  and that provider's opinion is supported by clinical evidence and not inconsistent with the

15  record, the provider will be given controlling weight.  20 C.F.R. § 416.927(c)(2).  "To

16  reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state

17  clear and convincing reasons that are supported by substantial evidence." *Bayliss*, 427

18  F.3d at 1216 (internal citation omitted).  "If a treating or examining doctor's opinion is

19  contradicted by another doctor's opinion, an ALJ may only reject it by providing specific

20  and legitimate reasons that are supported by substantial evidence." *Id.*  Furthermore, if the

21  treating physician's opinion is conclusory, brief, and unsupported by clinical findings, an

22  ALJ need not accept it in light of conflicting opinions. *Tonapetyan v. Halter*, 242 F.3d

23  1144, 1149 (9th Cir. 2001).  Generally, "the opinion of an examining physician is entitled

24  to greater weight than the opinion of a nonexamining physician." *Ryan*, 528 F.3d at 1198.

25  //

26

27

28

### III. DISCUSSION

**A.    Substantial Evidence Supports the ALJ's Determination that Paredes-Perez's Mental Impairments Are Not Disabling.**

The ALJ found that Paredes-Perez's mental impairments, although medically determinable, were not severe and, proceeding to step three, found that Paredes-Perez's non-severe mental impairments did not meet or medically equal the criteria for impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 21-22.) Paredes-Perez argues that the ALJ committed legal error in concluding that Paredes-Perez's mental impairments were not severe and that the ALJ failed to accord the opinion of Dr. Katzman appropriate weight. Dkt. No. 15 at 1:31-35. For the reasons discussed below, the Court finds that substantial evidence supports the ALJ's conclusion.

**1.    Severity of Paredes-Perez's mental impairment**

Paredes-Perez argues that the ALJ failed to abide by the slight abnormality standard in finding that Paredes-Perez's PTSD and major depressive disorder were not severe at step two of the analysis. Dkt. No. 15 at 7:1-15. Paredes-Perez maintains that Dr. Katzman's opinion, the opinion of a second treating psychologist, Susan Scheidt, Psy.D., who treated Paredes-Perez four times between July 23, 2008 and October 16, 2008, and Paredes-Perez's testimony that his situation was "one of hopelessness, tearfulness, and pain," establishes his impairment as more than a slight abnormality. Dkt. No. 15 at 5:18-23, 6:1-6, 7:4-19; (AR 323-26, 489.)

The ALJ concluded that "[t]he record lacks sufficient evidence to establish a severe psychiatric impairment." (AR 21.) The ALJ noted that Dr. Katzman had diagnosed Paredes-Perez with PTSD and major depressive disorder but found that, although the diagnoses were medically determinable, there was "no indication that [the symptoms were] expected to last more than twelve months and result in more than a slight functional limitation associated with basic work activities." (AR 21); Soc. Sec. Rep. 85-28, 1985 WL 56856, at *3.

//

An impairment should only be "found not severe . . . when medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work."  Soc. Sec. Rep. 85-28, 1985 WL 56856, at *3 (1985) (internal quotation marks omitted); *see also Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994) (applying Soc. Sec. Rep. 85-28).  To be severe, the medical evidence must establish that Paredes-Perez's impairment has more than a "minimal effect on [his] capacity to do such things as understand and carry out instructions, use judgment, respond appropriately to supervision, and deal with changes in a routine work setting." *Ter-Haroutunian v. Sullivan*, 947 F.2d 951, at *2 (9th Cir. 1991) (citing 20 C.F.R. § 416.921).

In her initial risk assessment, Dr. Katzman diagnosed Paredes-Perez with depression and PTSD, labeled his disorders as severe, and assessed his GAF score as 45.  (AR 489.) Beyond these labels, however, there is no evidence in the record that Dr. Katzman considered the effects of Paredes-Perez's illnesses to be severe or to have more than a substantial impact on his ability to work.  (AR 447-72.)  In fact, her treatment notes indicate that Paredes-Perez was responsive to treatment techniques and that he felt that he was "making progress."  (AR 465, 467.)  Moreover, a GAF score "does not have a direct correlation to the severity requirements in the SSA's mental disorders listing." *Gutierrez v. Astrue*, No. 12-cv-1390 MEJ, 2013 WL 2468344, at *6 (N.D. Cal. June 7, 2013) (citations omitted).  The ALJ is not required to consider a GAF score, and a finding contrary to a GAF score is not erroneous where it is supported by substantial evidence. *Id.* at 19.

Dr. Scheidt diagnosed Paredes-Perez with anxiety and depression, and noted a history of PTSD.  (AR 323-26.)  Dr. Scheidt never used the word severe to describe Paredes-Perez's condition.  (AR 323-26.)  Dr. Scheidt's treatment notes indicate that although Paredes-Perez was struggling with some anxiety, that he had "considerable strengths," was "motivated" and expressed confidence in his ability to adhere to an "action plan" of coping mechanisms, and that he reported that treatment was helpful to him.  (AR 323-25.)

//

In finding that Paredes-Perez's mental impairment was not severe, the ALJ relied on Paredes-Perez's testimony that he was currently receiving mental health treatment and that he had been prescribed Cymbalta, which helped to alleviate his symptoms. (AR 21, 43, 47.) Paredes-Perez's testimony was supported by Dr. Anderson's medical notes where he observed "a major improvement in [Paredes-Perez's] mood and spirits" as a result of his taking Cymbalta. (AR 603.) This is also consistent with the treatment notes of Dr. Katzman and Dr. Scheidt.

Substantial evidence in the record indicates that Paredes-Perez does suffer from some mental impairments, but substantial evidence also indicates that he is able to manage his symptoms with counseling and medication. And, there is no evidence in the record suggesting that his mental impairment would cause more than a minimal effect on his ability to work. *Burch*, 400 F.3d at 679; *see also Corrao*, 20 F.3d at 949. Therefore, the ALJ's decision regarding the severity of Paredes-Perez's impairments must be upheld.

**2.     The impact of Paredes-Perez's mental impairments on his residual functional capacity**

Paredes-Perez argues that the ALJ erred in according the opinion of Dr. Katzman "less weight because her treating relationship was limited to a brief period" in his assessment of Paredes-Perez's residual functional capacity. (AR 23.) Paredes-Perez argues that the ALJ's reasoning for according Dr. Katzman's opinion less weight was erroneous as Dr. Katzman "saw Plaintiff in person for at least eleven psychotherapy sessions, in addition to phone conversations," and because the record does not contradict Dr. Katzman's opinion. *Id.* at 5:11-14; 6:2-6. Paredes-Perez argues that Dr. Morley's observation that Paredes-Perez exhibited "anxiety and excessive worry" and Dr. Scheidt's diagnoses corroborate Dr. Katzman's opinion.

The ALJ did not dispute that Dr. Katzman qualified as a treating psychologist, however. (AR 23.) He stated only that Dr. Katzman's opinion was given less than significant weight because she treated Paredes-Perez for a brief period. (AR 23.)

*//*

The opinion of a treating provider is entitled to controlling weight when supported by clinical evidence and not inconsistent with the record. 20 C.F.R. § 416.927(c)(2). If a treating provider's opinion is contradicted, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, for rejecting her opinion. *Bayliss*, 427 F.3d at 1216. In addition, the ALJ may reject a treating provider's opinion if it is conclusory, brief, unsupported by clinical findings, and conflicts with another doctor's opinion. *Tonapetyan*, 242 F.3d at 1149.

Dr. Katzman's treatment notes show that she assessed Paredes-Perez's symptoms as severe twice: once in her initial assessment of him on June 23, 2009, and once on July 31, 2009. But Paredes-Perez places too much emphasis on these assessments, because the clinical findings do not support them. For example, in Dr. Katzman's July 31, 2009 treatment notes, she indicated that Paredes-Perez had no behavioral issues, was able to meet his basic needs, and had only moderate impairment in his ability to interact socially or function within an employment environment. (AR 449.) Dr. Katzman's treatment notes, unlike her conclusions that Paredes-Perez's condition is severe, are consistent with the opinions of Dr. Scheidt and Dr. Morley. As a whole, the records of Paredes-Perez's mental health treatment indicate that Paredes-Perez suffers from anxiety, depression, and PTSD, but not to the extent that would have more than a minimal effect on his ability to work. Because Dr. Katzman's assessment of Paredes-Perez's symptoms as severe conflicts with the record and is unsupported by clinical findings, the ALJ properly discounted her opinion and stated his specific reason for so doing.

Furthermore, none of these doctors had any opportunity to examine Paredes-Perez after 2009. And each of their treatment notes indicates that Paredes-Perez's symptoms improve with medication and counseling. Although the opinions of Drs. Morley, Scheidt, and Katzman "may indicate that [Paredes-Perez] has or had one of these disorders, they do not indicate the status of his current mental impairment" as they last evaluated or treated him over a year prior to the hearing before the ALJ on October 6, 2010. *Brollier v. Astrue*, No. 12-cv-01211 PSG, 2013 WL 1820826, at *7 (N.D. Cal. Apr. 30, 2013). "[T]he only

1   status reported about the current severity and progression . . . is [Paredes-Perez's

2   testimony] that he is feeling better with [Cymbalta]," which aligns with the independent

3   observation from Dr. Anderson.  (AR 43, 47, 603.)  Substantial evidence in the record

4   supports the ALJ's consideration of Katzman's opinion and his assessment of Paredes-

5   Perez's residual functional capacity.

6   **B.   Substantial Evidence Supports the ALJ's Determination that Paredes-Perez Is
7         Not Physically Disabled.**

8         At step three of his analysis, the ALJ concluded that Paredes-Perez's physical health

9   issues did not meet or medically equal the criteria for impairment listed in 20 C.F.R. Part

10  404, Subpart P, Appendix 1.  (AR 21-22.)  In reaching this conclusion, the ALJ found that

11  Dr. Anderson's opinion (1) relied heavily on subjective statements made by Paredes-Perez,

12  (2) is inconsistent with the clinical record, and (3) conflicts with the opinions of both Dr.

13  Morley and evaluating physician S. Mathur, M.D., which are consistent with the clinical

14  record.  (AR 23.)  Specifically, the ALJ concluded that Dr. Anderson's opinion regarding

15  the "intensity, persistence and limiting effects" of Paredes-Perez's symptoms was not

16  sufficiently supported by objective diagnostic evidence or clinical findings to warrant

17  according the opinion more weight.  (AR 21.)

18        Paredes-Perez argues that the ALJ erred in not giving proper weight to the medical

19  opinion of his treating physician, Dr. Anderson.  Dkt. No. 15 at 1:31-32.  Paredes-Perez

20  argues that Dr. Anderson's opinion sufficiently indicates that he suffers from a physical

21  impairment severe enough to be considered disabled at step three of the analysis and that

22  Dr. Anderson's opinion is corroborated by objective medical evidence.  *Id.*  Paredes-Perez

23  argues that Dr. Anderson's opinion is supported by a lumbar x-ray and MRI, which show

24  "worsening degenerative changes."  *Id.* at 6:13-14, 6:18-19.  Paredes-Perez also maintains

25  that Dr. Anderson's opinion is further supported by the fact that Paredes-Perez was a

26  "candidate for spinal surgery, which was scheduled but not performed due to

27  homelessness."  *Id.* at 6:19-21; (AR 491.)

28  //

On August 5, 2008, Dr. Anderson reported that Paredes-Perez was improved "perhaps 70%" and the following year, on April 1, 2009, determined that Paredes-Perez's injury did not require surgery.  (AR 282, 308.)  But, in his August 25, 2010 medical evaluation, Dr. Anderson noted that Paredes-Perez can only stand or walk for thirty minutes in one continuous period, can only sit for four hours, and can stand or walk an additional four hours, in a given eight hour period.  He also noted that Paredes-Perez suffers pain sufficient to interfere with his ability to "perform simple, routine work on a productive basis."  (AR 606-07.)

The ALJ found, however that Dr. Anderson's opinion regarding the limiting effects of Paredes-Perez's injuries was based largely on Paredes-Perez's self-assessed limitations, not the clinical record, and that Andersons' treatment of Paredes-Perez primarily involved neurology and pain management.  (AR 23, 269-70.)  Dr. Anderson's reliance on Paredes-Perez's self-assessment is significant because Paredes-Perez's testimony about his limitations was internally inconsistent and also conflicted with the clinical record.  (AR 23.)  For example, Paredes-Perez testified that he is bedridden three days each week and that he is unable to sit for more than thirty minutes at a time.  (AR 41-42.)  But, he also testified that he can stand for at least an hour, walk five miles without difficulty, and that his medication makes the pain tolerable.  (AR 40-41, 42, 45.)

The objective data in the record supports the ALJ's conclusion.  The clinical findings in Dr. Morley's 2008 qualified medical evaluation, Dr. Anderson's examination on February 26, 2009, and the October 5, 2009 opinion of treating physician Murat Pekmezai, M.D., indicate that Paredes-Perez's movements, gait, sensory examination, and reflexes were normal, that his power remains grossly intact, that he retains strength in his lower extremities, and that his positive straight leg raising test was negative.  (AR 23, 256, 292, 495.)  Dr. Morley noted in his September 2008 evaluation that the x-ray of Paredes-Perez's lumbar spine revealed only mild degenerative changes.  (AR 254.)  Dr. Mathur concluded in his May 27, 2009 Physical Residual Functional Capacity Assessment that in an eight hour workday, Paredes-Perez could sit six hours and stand or walk an additional six hours.

1  (AR 338.)  Dr. Mathur also found that Paredes-Perez could perform light work.  (AR 342-
2  344.)  In his October 2010 opinion, examining physician Stephen Conrad, M.D., reviewed
3  an MRI taken on October 25, 2012 of Paredes-Perez's right knee and observed a tear of the
4  posterior horn of the medial meniscus.  (AR 621.)  Dr. Conrad noted that, although not
5  necessary, surgery on the right knee was an option.  (AR 626.)  There is no evidence in the
6  record, however, suggesting that surgery was ever seriously considered after April 2009.
7  Paredes-Perez even testified at the October 6, 2010 hearing that surgery was no longer
8  being considered.  (AR 42.)

9      The ALJ was therefore justified in assigning less weight to Dr. Anderson's opinion
10  regarding the severity of Paredes-Perez's impairment and provided specific and legitimate
11  reasons, supported by substantial evidence, for doing so.  *Bayliss*, 427 F.3d at 1216.

12  **C.  The ALJ Properly Considered Paredes-Perez's Symptoms in Evaluating His**
13  **Residual Functional Capacity.**

14      At step four of his analysis, the ALJ concluded that "claimant has the residual
15  functional capacity to perform light work."  (AR 22); *see* 20 C.F.R. §§ 404.1567(b),
16  416.967(b).  In reaching this conclusion, the ALJ considered all of Paredes-Perez's
17  symptoms that were consistent with the record.  (AR 22.)  As previously discussed, the
18  ALJ properly considered and weighed the opinions of Drs. Katzman and Anderson
19  pertaining to the impact of Paredes-Perez's physical and mental impairments on his
20  capacity for gainful employment.  (AR 21-24.)

21      Paredes-Perez argues that the ALJ failed to "even mention [the side effects of
22  Paredes-Perez's medication,] let alone [their] impact on the Residual Functional Capacity
23  assessment."  Dkt. No. 15 at 8:12-13.  Specifically, Paredes-Perez cites Dr. Anderson's
24  notes from November 3, 2009 where he observed "moderate side effects of nausea,
25  constipation, itching, sweating, and fatigue."  (AR 542.)  Paredes-Perez argues that the
26  record contains medical evidence of "similar, though sometimes mild rather than moderate,
27  side effects at all of [his] appointments."  Dkt. No. 15 at 8:6-11.  This argument is not
28  supported by the record, however.

"The ALJ considers the type, dosage, effectiveness, and side effects of any medication [the] claimant takes or has taken to alleviate [his] pain or other symptoms as a factor relevant [to the ALJ's] assessment of the claimant's alleged symptom-based limitations." *Lobato v. Astrue*, No. 10-cv-02022 JCS, 2011 WL 4712212, at *15 (N.D. Cal. Oct. 7, 2011) (citing 20 C.F.R. § 404.1529(c)(3)(iv)) (internal quotation marks omitted). In evaluating the evidence, however, the ALJ "does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation marks and citation omitted). Here, the ALJ states in his opinion that "claimant testified he has medication side effects of sleepiness and difficulty focusing," suggesting that the ALJ did consider the side effects of Paredes-Perez's medications in assessing his residual functional capacity. (AR 22.) And, even if the ALJ did not consider the specific side effects of nausea, constipation, itching, and sweating, substantial evidence supports the ALJ's decision to consider only "sleepiness and difficulty focusing." (AR 22.)

Dr. Anderson's notes from November 3, 2009 are the first indication in the record that Paredes-Perez was suffering more than mild side effects from his medications. (AR 584-605.) At that visit, Paredes-Perez reported that he was suffering moderate nausea, constipation, itching, sweating, and fatigue. (AR 585.) Dr. Anderson noted, however, that the "stomach pains [were] in the past," and due to previous medications. (AR 587.) At Paredes-Perez's next visit on December 2, 2009, Dr. Anderson noted only moderate sweating and fatigue, and on December 23, 2009, the subsequent visit, observed no moderate symptoms. (AR 575, 579.) The record indicates that Paredes-Perez suffered mild, if any, side effects between December 23, 2009 and August 25, 2010, Dr. Anderson's most recent medical notes. (AR 565-75.)

At the time of Paredes-Perez's August 25, 2010 visit, he was taking Hydrocodone, Meloxicam, Cymbalta, and Polyethylene Glycol, a laxative. (AR 563.) Dr. Anderson noted that Paredes-Perez had no nausea, his itching and constipation were controlled, and that Paredes-Perez reported only mild fatigue and drowsiness. (AR 566.) Moreover, Paredes-Perez reported that he was happy with his current medication regimen. (AR 566.)

1    At the October 6, 2010 hearing on his SSI benefits, Paredes-Perez stated that he was

2    currently taking Hydrocodone, Meloxicam, and Cymbalta. (AR 40.) When asked if his

3    current medication had any side effects, Paredes-Perez answered that it made him feel

4    drowsy and that he had difficulty focusing. (AR 41.) This testimony is consistent with Dr.

5    Anderson's most recent medical records. (AR 603-04.) The ALJ referenced the symptoms

6    resulting from Paredes-Perez's most recent medication regimen. (AR 22.) The Court finds

7    that the ALJ properly considered the side effects in his assessment of Paredes-Perez's

8    residual functional capacity.

9                                    **IV. CONCLUSION**

10           After properly weighing the medical opinions in the record, substantial evidence

11   supports the ALJ's finding that Paredes-Perez suffers from some physical and mental health

12   impairments, but none so severe as to find him disabled under 20 C.F.R. Part 404, Subpart

13   P, Appendix 1. Substantial evidence also supports the ALJ's assessment of Paredes-Perez's

14   residual functional capacity for light work. Paredes-Perez's motion for summary judgment

15   is DENIED. Defendant's cross-motion for summary judgment is GRANTED.

16           IT IS SO ORDERED.

17           Date: August 2, 2013

18                                                    Nathanael M. Cousins
                                                      United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

Case No. 12-cv-01737 NC
ORDER RE: MOTIONS FOR                                  15
SUMMARY JUDGMENT